139   319
174   450

189   319
201   469

## G. W. POUNDSTONE v. PHILIP HAMBURGER.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
NO. 2 OF ALLEGHENY COUNTY.

Argued November 7, 1890—Decided January 5, 1891.

1. Where parties in business together, declare in a contract that " it is understood hereby that this agreement is not, in fact, and is not to be construed as creating a partnership," the court, in considering the rights of creditors, will be governed by the effect of the contract relation created, and not by the name given to the association.
2. The act of April 6, 1870, P. L. 56, providing that a loan to an individual or firm, upon a share of the profits in lieu of interest, shall not constitute the lender a copartner, does not authorize the exemption, when

Statement of Facts.

the lender, by privileges and covenants secured, acquires from the borrower as much control of the business as if he were an actual partner.

3. At all events, where a loan has been made for use in a business, under covenants for such privileges and control, the lender may not by a subsequent purchase of the business and the application of the purchase money to the loan, relieve himself from liability as a copartner, at least to the extent of the amount of the money loaned, under the provisions of said act.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 226 October Term 1890, Sup. Ct.; court below, No. 613 July Term 1887, C. P. No. 2.

On June 25, 1887, George W. Poundstone brought assumpsit against "Philip Hamburger, surviving George W. Jones and Philip Hamburger, late partners." Issue.

At the trial on February 27, 1890, the plaintiff proved and put in evidence a book account against George W. Jones, deceased, for merchandise sold to Jones, in his lifetime, the account running from March 12, 1881, to July 18, 1882, and showing a balance in favor of the plaintiff of $2,141.33; also, certain agreements under seal between George W. Jones, distiller, of Brownsville, Pa., and Philip Hamburger, the defendant, dated respectively September 1, 1881, exhibit 6; March 1, 1882, exhibit 7, and September 26, 1883, exhibit 8. By these agreements, (too voluminous to be copied here and almost too artistic to be omitted,) sufficiently set forth in the opinion of the Supreme Court, it was contended on the part of the plaintiff that the defendant was liable as a partner with George W. Jones, for the balance shown by the above-mentioned account.

At the close of the testimony, the parties agreeing thereto, a special verdict was taken, as follows:

"February 27, 1890, on trial list and jury sworn, and verdict for plaintiff for $2,141.33, subject to the opinion of the court on the question of law reserved, to wit, whether or not, under the agreements between Philip Hamburger and George W. Jones, bearing date September 1, 1881, March 1, 1882, and September 26, 1883, (marked exhibits 6, 7, and 8, copies of which are filed herewith,) the defendant was, by virtue of said

Opinion of the Court.

agreements, in law a copartner as to creditors of said George W. Jones, deceased."

On September 14, 1890, after argument of the question reserved, the court, WHITE, J., filed an opinion, holding that under the contracts in the case, the defendant and George W. Jones were general partners as to the plaintiff, and entered an order that upon payment of the verdict fee, judgment be entered for the plaintiff, against the defendant, for the amount of the verdict; exception. Judgment having been entered accordingly, the defendant took this appeal, assigning the said order for error.

*Mr. Josiah Cohen* (with him *Mr. A. M. Brown*), for the appellant.

Counsel cited: Denithorne v. Hook, 112 Pa. 240; Burgan v. Cahoon, 1 Penny. 320; 1 Collyer on Part., § 19; Hart v. Kelley, 83 Pa. 286; Parsons on Part., 177 a.; Irwin v. Bidwell, 72 Pa. 244.

*Mr. Thos. Patterson* (with him *Mr. Edw. Campbell, Mr. W. G. Guiler* and *Mr. D. Q. Ewing*), for the appellee.

Counsel cited: Waugh v. Carver, 2 H. Bl. 235; Cox v. Hickman, 8 H. L. 268; Edwards v. Tracy, 62 Pa. 374; act of April 6, 1870, P. L. 56; Hart v. Kelley, 83 Pa. 286; Bovill's Act, 28 & 29 Vic., c. 86;* Molwoo v. Court of Awards, L. R. 4 P. C. 419; Pooley v. Driver, 5 Ch. D. 458; Ex. parte Delhasse, 7 Ch. D. 511; Badely v. Bank, 34 Ch. D. 536; Frowde v. Williams, 56 L. J. Q. B. 62; Coffin's App., 106 Pa. 280.

OPINION, MR. JUSTICE STERRETT:

In his opinion, on the question of law reserved, the learned judge of the Common Pleas states, in substance, that at the close of plaintiff's testimony, counsel for the parties agreed

---

* This act, as quoted by the appellee, provides: " The advance of money by way of loan, to a person engaged or about to engage in any trade or undertaking, upon a contract in writing with such person that the lender shall receive a share of the profits arising from carrying on such trade or undertaking, shall not, of itself, constitute the lender a partner with the person or persons carrying on such trade or undertaking, or render him responsible as such."

Opinion of the Court.

upon the amount for which the verdict in favor of plaintiff was rendered, and also upon the form of the question reserved, to wit:

"Whether or not, under the agreements between Philip Hamburger and George W. Jones, bearing date September 1, 1881, March 1, 1882, and September 26, 1883, (marked exhibits 6, 7, and 8, copies of which are herewith filed,) the defendant was, by virtue of said agreements, in law a copartner as to creditors of said George W. Jones, deceased?"

There cannot, therefore, be any controversy as to the amount of the verdict, or the manner in which the question was reserved. If liable at all, the extent of defendant's liability is measured by the verdict. The only errors assigned relate to the entry of judgment in favor of plaintiff, on the question of law as stated above.

It is unnecessary to refer, in detail, to the provisions of the agreements which constitute the basis of the reserved question. They are made part of the record, and speak for themselves. The first provides for the sale by Jones to Hamburger of the entire product of his distillery, on a sliding scale by which ninety cents per bushel for rye in Chicago fixes fifty-three cents per gallon, as the price of pure rye whiskey at the distillery. An advance or decline of four cents per bushel in the price of rye, produces a corresponding rise or fall of one cent per gallon in the price of the whiskey. By a similar sliding scale, depending on the advance or decline of both corn and rye, the price of malt whiskey is also regulated. Jones binds himself not to manufacture whiskey for any other person or persons during the continuance of the contract, and also to use his best endeavors to make as much whiskey as the stated capacity of the distillery will produce.

The second agreement recites indebtedness of Jones to Hamburger, and the execution of a judgment bond, in his favor, in the penal sum of $16,000, to secure the payment of $8,209.36. It also provides for a loan of $12,000 to Jones, to be used in carrying on his business as a distiller. Hamburger "is to receive in compensation for the use of said money and loan, in lieu of interest thereon," one half of the profits of the business, one half of all the storage accruing from goods and spirits stored in bonded warehouses adjoining and belonging to said

Opinion of the Court.

distillery, on and after the first of March, 1882, and one half of the profits arising from slops for feeding purposes. He is also " to have the privilege of putting cattle and hogs in the pens annexed to said distillery, for feeding purposes, on his own separate account, and, in such event, shall be allowed interest at the rate of six per cent per annum on such investment. Monthly accounts of the business of the distillery—" showing the same in full and in detail "—are to be rendered to Hamburger. In default of the rendition of such accounts, or in default of payment by him of any one or more of said notes, or renewals thereof, or of said indebtedness, etc., execution may forthwith issue for the purpose of collecting the whole of said indebtedness and loan ; and, in case the distillery premises and appurtenances are sold on such execution, the sole and exclusive right of using the name of George W. Jones as a trade-mark, etc., shall pass thereby to the purchaser of the premises. It is further provided, in the second agreement, that it shall go into effect on March 1, 1882, and continue in force until the loan and indebtedness therein mentioned, as well as any further indebtedness of the same nature, is fully paid and discharged. The provisions of the first agreement, entitling Hamburger to the entire product of the distillery, are extended and made part of the second agreement.

The article of September 26, 1883, after referring to the provisions of the former agreement for an equal division of net profits of the distillery, sale of slops, proceeds of storage, etc., recites the fact that Jones, by deed of even date, has conveyed to Hamburger the distillery, fixtures, machinery, implements, and all the personal property therein or in any manner connected therewith, and then declares that by mutual consent the second agreement is thenceforth null and void, " as far as the division of the net profits and of the proceeds of storage and sale of slops connected with said distillery is concerned." It then provides that Jones shall " devote his entire time, skill, attention, and ability to the proper running " of the distillery, for which services he is to receive as his salary " one half of the net profits arising from the sale of all the whiskey produced in said distillery by him, the said George W. Jones, after first deducting all expenses of every character connected with the business, the distillery and its running." While working un-

Opinion of the Court.

der this contract, Jones binds himself not to manufacture whiskey for any other person than Hamburger, and not to draw more than $1,200 per annum of his salary, etc. It is also stated in the agreement that part of the consideration of the sale to Hamburger has been appropriated to the payment of the money loaned or advanced by him under the second agreement.

In view of the foregoing and other provisions of the three agreements, but more especially those of the second, we agree with the learned judge of the court below that, as to creditors, Hamburger should be considered a partner, unless he is protected by the act of April 6, 1870, P. L. 56. That act declares:

" It shall be lawful for any person or persons to loan money to any individual, firm, association, or corporation 'doing business in this commonwealth, upon agreement to receive a share of the profits of such business, as compensation for the use of the money so loaned, in lieu of interest; and such agreement, or the reception of profits under such agreement, shall not render the person or persons making such loans liable as a copartner, in such business, to other creditors of such individual, firm, association, or corporation, except as to the money so loaned: Provided, that such agreement for loan shall be in writing, and that this act shall not apply to any loan made by a member of any such firm, association, or corporation, or to any one who holds himself out as such, and shall not be construed to repeal or affect any portion of the law relating to special partnerships: provided, however, that any person so loaning under this act shall not hold himself out as a general partner, so as to induce credit to be given to any party or parties, association, or corporation to whom the said loan shall be made."

The act was evidently intended to authorize what is clearly expressed therein and nothing else, viz., the loan of " money to any individual, firm, association, or corporation, doing business in this commonwealth, upon an agreement to receive a share of the profits of such business, as compensation for the use of the money so loaned, in lieu of interest." It was never intended to authorize the lender to take from the borrower a covenant prohibiting him from manufacturing for others, and securing to himself an exclusive right to the entire product of the business, together with other rights and privileges connected therewith, as was done in this case, and thus acquire at

Opinion of the Court.

least as much control of the business as if he were an active partner therein. Both the tenor of the act and the spirit of the proviso show that it was not intended that the lender, under its provisions, should control or interfere with the business of the borrower, otherwise than as a mere creditor. It is impossible to consider the provisions of the first and second agreements without being convinced that their legitimate effect was to enable Hamburger to control the business of the distillery, to an extent that would have been unwarranted in the case of an active partner, not invested with special and extraordinary powers. Special pains is taken to declare in the agreement itself: "It is understood hereby that this agreement is not, in fact, and is not to be construed as creating a partnership." Without this emphatic declaration to the contrary, the parties themselves might well have regarded themselves as partners, rather than borrower and lender. In considering the claims of creditors of the business, it is the effect of the contract relation which the parties have formed, and not the name they may have seen fit to give to their contract, that must govern.

While the transaction has many of the features of a partnership, under the guise of a loan authorized by the act, it is unnecessary to decide in this case that the defendant is liable generally as a partner. We think, however, that he is clearly liable under the special provisions of the act, to the extent of the money loaned and afterwards withdrawn by him. In other words, we are of opinion that the act, properly construed, was intended to render the lender liable to the creditors of the business, to the extent of the money loaned or advanced under its provisions.

In the main, our act is copied from the English statute of 28 and 29 Vic., but there is some difference in their phraseology. Our act, as we have seen, provides that "such agreement, or the reception of profits under such agreement, shall not render the person or persons making such loans liable as a copartner in such business to other creditors" of the borrower, "except as to the money so loaned." The English statute declares that the reception of profits "shall not of itself constitute a partnership." The words, "except as to the money loaned," or words equivalent thereto, are not employed in the latter. The court was therefore right in holding that if the

Statement of Facts.

money loaned is needed to pay other creditors it must be so applied; and, inasmuch as the money loaned and withdrawn by the defendant was needed for that purpose, he is liable to the plaintiff. Any other construction of the act would ignore the effect intended to be given by the exception above quoted. By necessary implication, the words therein employed limit the exemption from liability, and render the lender liable as a co-partner in the business, at least to the extent of the money loaned. The assignments of error are not sustained.

Judgment affirmed.

Argued November 7, 1890—Decided January 5, 1891.